# United States District Court

Southern DISTRICT OF ILLINOIS

FILED
FEB 02 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

Richard White ,  )
                 )
      Plaintiff  )
                 )
      vs.        )   Case No. 18-165-MJR
                 )   *(The case number will be assigned by the clerk)*
Wexford Health Sources, Inc. )
Physician's Assistant Nurse Blake (full name unknown) )
~~[redacted]~~ )
Dr. Alfonso David )
Unknown John and Jane Does )
                 )
                 )
                 ;)
                 )
      Defendant(s) )

(List the full name of ALL plaintiffs and defendants in the caption above. If you need more room, attach a separate caption page in the above format).

## COMPLAINT*

*Indicate below the federal legal basis for your complaint, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants). However, 42 U.S.C. §.1983 and "Bivens" do not cover all prisoners' claims. Many prisoners' legal claims arise from other federal laws. Your particular claim may be based on different or additional sources of federal law. You may adapt this form to your claim or draft your own complaint.*

☑   42 U.S.C. §1983 (state, county or municipal defendants)

☐   Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)(federal defendants)

☐   Other federal law: _____

☐   Unknown _____

## I. FEDERAL JURISDICTION

(1) *Please refer to the instructions when filling out this complaint. Prisoners are not required to use this form or to answer all the questions on this form in order to file a complaint. This is not the form to file a habeas corpus petition.*

Pg. 1

Jurisdiction is based on 28 U.S.C. § 1331, a civil action arising under the United States Constitution or other federal law. *(You may assert a different jurisdictional basis, if appropriate).*

## II. PARTIES

2) A. Plaintiff:

  Full Name: Richard White

  Prison Identification Number: R14550

  Current address: Shawnee Correctional Center
  6665 State Route 146 East  Vienna, IL. 62995

*For additional plaintiffs, provide the information in the same format as above on a separate page. If there is more than one plaintiff, each plaintiff must sign the Complaint, and each plaintiff is responsible for paying his or her own complete, separate filing fee.*

3) B. Defendants

  Defendant #1:

  Full Name: Wexford Health Sources, Inc.

  Current Job Title: Health Provider under Contract with Shawnee C.C.

  Current Work Address _____

4) Defendant #2:

  Full Name: Physician's Assistant, Nurse Blake (full name unknown)

  Current Job Title: Physician's Assistant/Nurse Practitioner

  Current Work Address Shawnee Correctional Center
  6665 State Route 146 East, Vienna, IL. 62995

5) Defendant #3:

  Full Name: ~~████~~ (~~████~~) Dr. Alfonso David

  Current Job Title: Doctor/Medical Director

2

Current Work Address  Shawnee Correctional Center
6665 State Route 146 East, Vienna, IL. 62995

6) Defendant #4:

Full Name: Unknown John and Jane Does

Current Job Title: Nurses, Various Officers, Administrators and Directors

Current Work Address  Shawnee Correctional Center
6665 State Route 146 East, Vienna, IL. 62995

Defendant #5:

Full Name: _____

Current Job Title: _____

Current Work Address _____

_For additional defendants, provide the information in the same format as above on a separate page._

## III. LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or appeal in forma pauperis in federal court if that prisoner has "on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

7) A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?    Yes ☐    No ☑

If yes, please describe _____

8) B. Have you brought any other lawsuits in federal court while incarcerated?

Yes ☐    No ☑

C. If your answer to B is yes, how many? _____ Describe the lawsuit(s) below.

3

1. Name of Case, Court and Docket Number
   _____

2. Basic claim made _____

3. Disposition (That is, how did the case end? Was the case dismissed? Was it appealed? Is it still pending?) _____

*For additional cases, provide the above information in the same format on a separate page.*

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Prisoners must exhaust available administrative remedies before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). You are not required to allege or prove exhaustion of administrative remedies in the complaint. However, your case must be dismissed if the defendants show that you have not exhausted your administrative remedies, or if lack of exhaustion is clear from the complaint and its attachments. You may attach copies of materials relating to exhaustion, such as grievances, appeals, and official responses. These materials are not required to file a complaint, but they may assist the court in understanding your claim.*

9) A. Is there a grievance procedure available at your institution? Yes ☑ No ☐

10) B. Have you filed a grievance concerning the facts relating to this complaint?

   Yes ☑ No ☐

   If your answer is no, explain why not _____
   _____

11) C. Is the grievance process completed? Yes ☑ No ☐

## V. STATEMENT OF CLAIM

Place(s) of the occurrence _____

4

## V. Facts

12.) On 6-26-15, at approximately 1:30 p.m., plaintiff suffered a left knee injury while playing basketball in the gym at Shawnee Correctional Center. Plaintiff was escorted by wheelchair from the gym to the health care unit. Plaintiff was examined by Nurse Terry and Physician's Assistant Blake. Plaintiff explained to them that he couldn't walk, fully extend, put any pressure on, stretch or lift his left leg, and that he was experiencing great pain. Plaintiff was prescribed pain pills, given crutches, told he would receive a follow-up and was sent back to his housing unit. (See exhibit (A) for crutches possession card).

13.) On 6-30-15, plaintiff had a follow-up and explained to Physician's Assistant Blake that his knee hasn't gotten any better. Plaintiff was given a slow walk pass and a sports restrictions memorandum. (See exhibit (A) for slow-walk pass and sports restrictions memorandum). (See exhibit (B) for call pass).

14.) On 7-3-15, plaintiff was in his cell when he stood up from his bunk to use the toilet inside the cell and his left knee snapped out of place. Plaintiff was escorted by wheelchair to the healthcare unit where he was seen by an unknown nurse and explained that his left knee is and has gotten worse. Plaintiff was given an ace bandage for the first time since the injury occurred and pain pills. (See Exhibit (A) for ace bandage possession card).

15.) On approximately 7-6-15, plaintiff had x-rays taken on his left knee. Before seeing x-ray specialist he explained to unknown nurses that his knee has gotten worse.

16.) On 7-10-15, plaintiff was seen by Physician's Assistant Blake who had plaintiff's x-ray results. He told plaintiff that he had

Pg. 5

17.) Tricompartment Arthritis/osteoarthritis and knee joint effusion. Plaintiff explained to Blake that his knee snapped out of place the day before and that he never had any arthritis or problems with his left knee before the injury on 6-26-15. He also explained that his left knee is always popping, snapping out of place and causing him great pain. That he can't fully stretch out his left leg and (upon receiving information) he has a torn ACL, MCL, tissue(s), muscle(s) and/or ligament(s) in his left knee, and that he would like a MRI since the x-ray didn't identify the injury and because his knee has rapidly gotten worse. (see exhibit (B) for call pass).

18.) On 8-10-15, plaintiff's left knee snapped out of place and he was placed back on crutches, placed on medical lay-in, no gym and yard and was to receive meals in his cell. Each time plaintiff was placed on crutches he had to go eat in the dining hall where the floors stayed wet and messy, and no matter the weather conditions outside until 8-10-15.

19.) On 9-9-15, one day after plaintiff saw Dr. David and requested a MRI on his left knee, after explaining everything aforementioned in these facts, he received a paper stating that he was denied a MRI by facility's Medical Director Dr. David, ignoring the many times his knee has snapped out of place, the symptoms of something more serious that an x-ray couldn't show and explanations he'd given about the condition of his left knee. (See exhibit (A) for MRI denial and exhibit (B) for call pass).

20.) On 7-27-15, and 8-27-15, plaintiff filed emergency grievances concerning his left knee and the inadequately medical treatment he was receiving that he never got back or a response to. (See exhibit (C) for grievances).

21.) Approximately mid-to late September 2015, plaintiff was taken to an outside hospital almost three months after the initial injury to his left knee and after all of his complaints. He was examined by an unknown female nurse and/or doctor. She did her examination by sight, touch and

Pg. 6

22.) questions. Plaintiff explained everything aforementioned in these facts about his left knee and that it has gotten rapidly worse. Plaintiff still didn't receive a MRI but, the doctor/nurse's professional verbal diagnosis was that he had an ACL tear which is what he'd been telling medical officials and correctional officers at Shawnee Correctional Center since the injury first occurred. The female doctor and/or nurse gave plaintiff a paper with knee exercises for him to complete everyday for two months. (See exhibit (A) for treatment exercises).

23.) On approximately 9-24-15, plaintiff began the treatment exercises in the healthcare unit in front of medical officials. From 10-9-15, to 10-14-15, and 11-10-15, to 11-25-15, plaintiff didn't receive a call pass to the healthcare unit to proceed with his treatment exercises. All nurses and medical officials neglected and failed the simple task of printing out a call pass so, plaintiff could do his treatment in their presence. Everyday during the two month span of his treatment, plaintiff alerted all known and unknown medical officials everything aforementioned in these facts about his left knee worsening rapidly and not improving. Plaintiff's complaints were ignored as his injury was serious and obvious and is currently obvious. (See exhibit (B) for call passes and non-call passes).

24.) Plaintiff's left knee snapped out of place in January of 2016, and he was seen by Physician's Assistant Blake on 1-29-16, where Blake gave him inadequate medical treatment yet again. (See exhibit (B) for call pass). Plaintiff filed an emergency grievance on 1-29-16, that was denied by Shawnee Correctional Center on 2-29-16, and 3-1-16, and denied by Springfield on 9-30-16, and 10-7-16. (See exhibit (C) for grievance and grievance denials). Plaintiff saw Dr. David in March of 2016, about his knee where Dr. David denied a MRI request as plaintiff complained of pain and his inability to be active. (See exhibit (B) for call pass).

25.) In approximately August 2017, plaintiff's left knee snapped out of

Pg. 7

26.) place and he was escorted by wheelchair by an unknown male nurse who gave plaintiff crutches, pain pills, a mandate to shower in the healthcare unit and a bottom bunk-bottom deck referral. Plaintiff never got the cell change and is still currently in cell 3-D-64 (see exhibit (B) for latest call pass).

27.) On 8-30-17, plaintiff was seen by Dr. David and Dr. David read from plaintiff's medical file to plaintiff, that his left knee snapped out of place on some stairs causing him to fall down the stairs. Plaintiff was denied another MRI request by Dr. David and was sent to his housing unit. Plaintiff filed an emergency grievance on Dr. David and the healthcare officials that was denied by Shawnee Correctional Center on 9-13-17, and denied by Springfield on 10-17-17. (See exhibit (C) for grievance and grievance denials).

28.) On 11-4-17, plaintiff's left knee snapped out of place and he was escorted by wheelchair by an inmate (not healthcare officials) healthcare worker to the healthcare unit. Plaintiff was seen by an unknown female nurse who called Dr. David by telephone asking him for permission to give plaintiff crutches or to admit plaintiff to hospice care in the healthcare unit because he couldn't walk. Dr. David denied both requests and plaintiff was escorted by wheelchair back to his housing unit by the same inmate healthcare worker. Plaintiff had to hop around on one leg until 11-6-17. On 11-6-17, plaintiff was escorted by wheelchair by the same inmate healthcare worker to the healthcare unit where Dr. David wouldn't see him and denied him crutches again when that same unknown female nurse asked Dr. David for crutches and to see plaintiff. An emergency grievance was filed on Dr. David on 11-8-17, and is pending in Springfield as it was denied by Shawnee on 12-6-17. Plaintiff was placed on medical lay-in. (See exhibit (A) for lay-in slip and exhibit (O) for call pass on 11-6-17). On 11-18-17, plaintiff was placed in cell 3-D-22, a lower-deck cell. After approximately two and one half years, plaintiff was given a MRI on his left knee on 12-19-17, and was told he had an ACL tear and a meniscus tear on 12-27-17.

pg. 8

# VI. Legal Claims

Plaintiff reallege and incorporate by reference paragraphs 1-28

29.) Each defendant is sued individually and in his/or her official capacities. Each defendant is at all times relevant to this lawsuit, and acted under the color of state law at all times in this complaint.

30.) Each of the defendants in this complaint contributed to the violations of the plaintiff's United States Constitution Eighth Amendment rights that protects him from cruel and unusual punishment and protects his right to adequate medical care.

31.) The inordinate denials and delays of establishing and providing plaintiff a comprehensive medical plan, and MRI for his left knee injury are acts of cruel and unusual punishment administered by each defendant violating his Eighth Amendment, United States Constitutional right to adequate medical care.

32.) All of the defendants unprofessional and unconstitutional conduct has led to inordinate denials and delays in treating plaintiff's left knee injury as well as the possible discovery and treatment of his injury that worsened over time.

33.) Defendant Wexford Health Sources, Inc. is and was at all times relevant to this lawsuit and is legally responsible for providing individuals housed at Shawnee Correctional Center prompt and adequate medical care. Wexford provides health professionals and services to Shawnee Correctional Center pursuant to contract and is under obligation to implement written policies and directives to ensure adequate medical treatment is provided at Shawnee Correctional Center.

34.) Wexford is under contract with Shawnee Correctional Center to (but not limited to) maintain the health status of its offenders, create effective medical programs, better the quality of care, provide acceptable levels of staffing while monitoring

pg. 9

the performance of medical staff to ensure adequate job performance when caring for offenders and to run the health program.

35.) Wexford has failed to provide plaintiff with timely medical care, a willingness to identify and correct incompetent medical care as they have denied and delayed a MRI on plaintiff's left knee on 9-9-15. Wexford failed to provide reasonably prompt medical treatment, and monitored performance of it's employees at Shawnee Correctional Center as plaintiff has filed several grievances on Dr. David, the healthcare unit and Physician's Assistant Blake about their being deliberate indifferent to his serious medical needs.

36.) As a direct and proximate result of the acts and omissions of defendant Wexford's deliberate indifference to plaintiff's medical needs, plaintiff suffers continuing inactivity, pain and reinjuries to his left knee that continues to snap out of place. That has gotten significantly worse after snapping out of place so many times that plaintiff now walks as if his left leg is shorter than his right leg. Plaintiff walks in a limp due to further injury and pain.

37.) Defendant Physician's Assistant Blake (full name unknown) is at all times mentioned in this complaint as a Physician's Assistant at Shawnee Correctional Center who is employed by Wexford Health Sources, Inc. He is at all times relevant to this lawsuit and is legally responsible for providing individuals housed at Shawnee Correctional Center prompt and adequate medical treatment.

38.) Physician's Assistant Blake showed deliberate indifference against plaintiff's serious medical needs. Plaintiff was seen and examined by Blake on 6-30-15, 7-10-15, 7-13-15, 8-11-15 and (but not limited to) on 1-29-16, where Blake was informed of plaintiff's worsening left knee condition as it continued to snap out of place, and where plaintiff could barely walk in his presence and Blake did nothing to remedy or identify the injury.

39.) On 7-10-15, plaintiff attempted to extend and stretch out his left knee

pg. 10

as directed when being examined by Physician's Assistant Blake, but couldn't. Plaintiff then requested that a MRI be done since he continues to suffer complications of a more serious injury than an x-ray could intel, as it is obvious he is in need of medical treatment for a more serious problem. Physician's Assistant Blake denied and delayed plaintiff's request for a MRI and didn't seek out any options to identify or remedy plaintiff's injury.

40.) In January of 2016, plaintiff was seen by Physician's Assistant Blake after his left knee snapped out of place again and Blake gave inadequate medical treatment again as he left plaintiff in the same condition with no plans or solutions to restore plaintiff's left knee to health as plaintiff left Physician's Assistant Blake's office.

41.) Due to the display of deliberate indifference by Physician's Assistant Blake toward plaintiff's medical needs, plaintiff was and is forced to suffer through his left knee snapping out of place. Plaintiff's left knee can't fully extend or stretch, is in around the clock pain and has gotten significantly worse to where he can't kick his left leg out when he walks in the short limped steps that has him walking as if his left leg is shorter than his right leg. Which is further significant injury and a wanton infliction of pain resulting from his knee continuing to snap out of place without being adequately treated or cared for.

42.) Defendant Doctor Alfonso David is at all times mentioned in this complaint as a doctor at Shawnee Correctional Center who is employed by Wexford Health Sources, Inc. He is legally responsible for providing individuals housed at Shawnee Correctional Center prompt and adequate medical treatment.

43.) Dr. David showed deliberate indifference toward plaintiff's serious medical needs after he examined plaintiff and was informed of plaintiff's left knee worsening and continuing to snap out of place 7-14-15, 8-13-15, 8-24-15, 9-8-15, 9-22-15, 10-29-15, 11-30-15, 3-14-16, 8-30-17, and (but not limited to)

Pg. 11

11-16-17, and did not take any steps toward identifying, treating adequately, or curing plaintiff's injury.

44.) On 7-14-15, plaintiff was examined by Dr. David concerning his left knee injury. Plaintiff showed Dr. David that he couldn't fully extend or stretch out his left knee, walk without a limp or stand straight up because his knee is partially bent. Plaintiff explained that his knee snapped out of place two times after the initial injury and that the x-ray didn't reveal the condition of his knee. Plaintiff then asked for a MRI that was denied and delayed by Dr. David, forcing plaintiff to suffer through symptoms of a more serious unidentified medical need, with no plan in place to adequately treat and identify the injury. Dr. David ignored, neglected and showed deliberate indifference toward plaintiff's obvious medical need that needs medical care.

45.) Between June of 2015, and current date, plaintiff's left knee injury has gotten significantly worse. He was placed on crutches several times due to his left knee continuing to snap out of place. An obvious sign that something more serious is wrong with his knee than the inadequate medical treatment he has been receiving could intel or care for. Dr. David continued to prescribe pain pills and request x-rays after plaintiff explained that neither helps his injury. Dr. David continued to deny and delay plaintiff's requests for a MRI during the several times he examined plaintiff showing deliberate indifference to his serious medical need as he learned of plaintiff's conditions and did nothing to remedy the injury.

46.) On 9-9-15, Dr. David and the collegiate review board denied plaintiff a MRI on his left knee, ignoring the symptoms that for approximately three months had been demonstrating something more serious needing medical care.

47.) On 8-30-17, Dr. David showed deliberate indifference when he read to plaintiff from plaintiff's medical file that he fell down a flight when his left knee snapped out of place as he was going down the stairs. With that information in front of him and the plaintiff explaining that the pain pills and x-rays did nothing to

Pg. 12

improve his injury, Dr. David denied another MRI request by the plaintiff.

48.) On 11-4-17 ~~[illegible]~~ Dr. David violated plaintiff's Eighth Amendment of the United States Constitution, of cruel and unusual punishment when he showed deliberate indifference to plaintiff's medical needs by not providing plaintiff/refusing plaintiff crutches to help him walk after his left knee snapped out of place on 11-4-17, forcing plaintiff to hop around on his right leg until a semblance of strength was back in his left leg/knee. Dr. David refused to see plaintiff and give him crutches on 11-6-17, as well ~~[illegible]~~ when plaintiff was in healthcare to take an x-ray.

49.) As a result of the negligence, display of deliberate indifference and violation of plaintiff's Eighth Amendment Constitutional rights by Dr. David, plaintiff was and still is forced to suffer through his left knee snapping out of place, not being able to fully extend or stretch, ~~[illegible]~~ getting significantly worse as he can't kick his left leg out forward when he walks in short limped steps as if his left leg is shorter than his right leg and being in around the clock pain. Disabling him from being active with his legs, limiting and altering the way he moves around. Furthermore, Dr. David allowed plaintiff's left knee to snap out of place so many times without implementing a plan to repair it, that further significant injury and a wanton infliction of pain has taken place as plaintiff now walks as if his left leg is shorter than his right leg in a limp.

50.) Each unknown John and Jane Doe are various officers, administrators, directors and nurses employed ~~[illegible]~~ by the I.D.O.C, and/or, Wexford Health Sources, Inc. whom are at all times relevant to this lawsuit. They are legally responsible for the health and safety of the individuals housed at Shawnee Correctional Center.

51.) Healthcare officials showed deliberate indifference toward plaintiff's medical needs when they failed to print out call passes for plaintiff so he could proceed with his treatment on 10-9-15, to 10-14-15, and on 11-19-15, to 11-25-15. Health-care officials showed deliberate indifference when they sent a healthcare inmate

Pg. 13

worker to wheelchair plaintiff back and forth to the healthcare unit after plaintiff's left knee snapped out of place on 11-4-17, and on plaintiff's follow-up date on 11-6-17. Plaintiff was placed in the care of an inmate for his medical needs that was authorized by healthcare officials. Plaintiff also informed many nurses of the condition of his left knee during, before and after treatment to current date. As a result of their display of deliberate indifference toward plaintiff's medical needs, plaintiff now walks as if his left leg is shorter than his right leg in a limp, as they did nothing to remedy plaintiff's injury.

52.) Since July of 2015, plaintiff has expressed to defendants Physician's Assistant Blake et al., that he suffers FROM symptoms of an injury that is not being diagnosed by the x-rays he's been given and that the injury was getting worse. (See exhibit (D) for symptoms and MRI results).

53.) On 12-19-17, plaintiff was sent to Union County Hospital in Anna, IL. for a MRI to be done on his left knee. On 12-27-17, plaintiff was read his MRI results by Dr. David and was told that he suffers from an ACL and meniscus tear in his left knee, and that the x-ray taken on his left knee on 11-6-17, revealed a mild-soft tissue prominence, supra patella bursal (as told and spelled out to plaintiff by Dr. David), a different-more severe report from the Tricompartment Arthritis/Osteoarthritis and knee effusion diagnosis on 7-10-15. (See exhibit (D) for MRI results).

54.) Furthermore, as a result of defendants Wexford Health Sources, Inc. et al., violating plaintiff's United States Constitution Eighth Amendment rights and display of deliberate indifference toward plaintiff's serious medical needs, plaintiff not only suffers an ACL tear and Tricompartment Arthritis/Osteoarthritis, he now suffers a mild-soft tissue prominence, supra patella bursal. He also suffers from:
- Large bucket-handle tear medial meniscus;
- Trace joint centered subchondral bone marrow edema over the medial weightbearing aspect of the medial compartment;

Pg. 14

- moderate sized left effusion. Prominent plica;
- Lateral tilt/subluxation of the patella which is high-riding;
- High-grade partial/near full-thickness tearing of the ACL. There are thought to be some stretched/lax diminutive fibers remaining. (See exhibit (D) for MRI results).

## VII. Prayer for Relief

55.) Wherefore, plaintiff respectfully prays that this court enter judgement granting plaintiff:

56.) A declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United States.

57.) A preliminary and permanent injunction ordering Shawnee Correctional Center and defendant Wexford Health Sources, Inc. to create a comprehensive plan to ensure plaintiff, current and future prisoners of Shawnee Correctional Center receive adequate medical treatment under law.

58.) Compensatory damages in the amount of one hundred fifty thousand dollars ($150,000.00) against each defendant;

59.) Punitive damages in the amount of one hundred seventy-five thousand dollars ($175,000.00) against each defendant;

Pg. 15

60.) Damages for physical and mental suffering in the amount of two hundred thousand dollars ($200,000.00) against each defendant;

61) A jury trial on all issues triable by jury;
Recovery of plaintiff's costs in this lawsuit;

62.) Any additional relief this court deems just, proper and equitable.

63.)  Date: 1-19-18
Respectfully Submitted
X Richard White
Richard White #R14550
Shawnee Correctional Center
6665 State Route 146 East
Vienna, IL. 62995

## Verification

64.) I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.
Executed at Vienna, Illinois on 1-19-18

X *Richard White*
Richard White # R74550

65.)

FIRST-CLASS MAIL
neopost 01/30/2018
US POSTAGE $003.52
ZIP 62995
041M12251977

Richard White R14550
Shawnee Correctional Center
6665 State Route 146 East
Vienna, IL 62995

U.S. Courthouse
750 Missouri Avenue
East St. Louis, IL 62201

MAIL CL
US MAR



RECEIVED
FEB 02 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE