IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RICHARD WHITE, )
R-14550, )
 )
       Plaintiff, )
 )
vs. ) Case No. 18−cv–00165−MJR
 )
WEXFORD HEALTH SOURCES, INC., )
NURSE BLAKE, )
ALFONSO DAVID, )
and JOHN AND JANE DOES, )
 )
       Defendants. )
 )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Richard White, an inmate who is currently incarcerated at Shawnee Correctional Center (Shawnee), brings this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). In his Complaint, Plaintiff alleges that Wexford Health Sources, Inc. (Wexford), Alfonso David (doctor), Nurse Blake (nurse practitioner/physician's assistant), and several unknown nurses (John and Jane Does) denied him adequate medical care for a knee injury he sustained at Shawnee in 2015. (Doc. 1, pp. 5-16). Plaintiff now brings claims against these defendants under the Eighth Amendment. (Doc. 1, p. 5-15). He seeks declaratory judgment and monetary damages against them. (Doc. 1, pp. 15-16). Plaintiff also seeks a preliminary and permanent injunction requiring Wexford and Shawnee officials to create a comprehensive plan for his future medical care. (Doc. 1, p. 15).

This case is before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

1

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives preliminary review under this standard.

## The Complaint

While playing basketball in Shawnee's gymnasium on June 26, 2015, Plaintiff alleges that he suffered a serious injury to his left knee. (Doc. 1, p. 5). He was escorted by wheelchair to the prison's health care unit (HCU). *Id*. There, he was examined by Nurse Blake and Nurse Terry.[1] *Id*. He was in pain and could not walk, extend his leg, or put pressure on it. *Id*. Plaintiff was given pain pills, issued crutches, and sent back to his housing unit. *Id*.

---

[1] Nurse Terry is not named as a defendant in the caption of the Complaint, and Plaintiff does not assert any claims against this individual. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United*

He returned to the HCU for a follow-up visit on June 30, 2015. (Doc. 1, p. 5). Plaintiff told Nurse Blake that his knee was not any better. *Id*. He was given a slow walk pass and a "sports restriction memorandum." *Id*.

On July 3, 2015, Plaintiff's left knee snapped out of place when he stood up from his bunk bed. (Doc. 1, p. 5). He was taken in a wheelchair to the HCU, where he was seen by an unknown nurse. *Id*. Plaintiff told the nurse that his knee had "gotten worse." *Id*. The nurse issued Plaintiff more pain pills and gave him an ace bandage. *Id*.

On July 6, 2015, Plaintiff was taken for an x-ray. (Doc. 1, p. 5). He again told several unknown nurses that his knee had "gotten worse." *Id*. After reviewing the results of the x-ray with Plaintiff on July 10, 2015, Nurse Blake told Plaintiff that he suffered from "tri-compartment arthritis/osteoarthritis and knee joint effusion." (Doc. 1, pp. 5-6). Plaintiff told Nurse Blake that he never suffered from knee problems before his sports injury. (Doc. 1, p. 6). Since injuring his knee, Plaintiff explained that it regularly popped out of place and caused significant pain. *Id*. When nothing was done to address his complaints, Plaintiff filed an emergency grievance on July 27, 2015. *Id*. He received no response. *Id*.

On August 10, 2015, Plaintiff's left knee popped out of place again. (Doc. 1, p. 6). He was put back on crutches, given a gym/yard restriction, and placed on a medical lay-in with an order for delivery of meals to his cell. *Id*. Despite the orders, Plaintiff was required to eat his meals in the dining hall, where he consistently encountered wet and messy floors. *Id*. He filed another emergency grievance on August 27, 2015, but received no response to it. *Id*.

On September 9, 2015, Plaintiff met with Doctor David about his knee. (Doc. 1, p. 6). Plaintiff requested an MRI. *Id*. The following day, Doctor David provided Plaintiff with a

---

*States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). All claims against Nurse Terry are considered dismissed without prejudice from this action.

written denial of his request. *Id*. In mid- to late- September, Plaintiff was taken to an outside hospital and examined by an unknown nurse and/or doctor. *Id*. The medical professional tentatively diagnosed Plaintiff with a torn ACL. (Doc. 1, p. 7). He was given instructions for knee exercises and ordered to perform the exercises daily for two months. *Id*.

Plaintiff complains that he was frequently denied call passes in October and November 2015. (Doc. 1, p. 7). Consequently, he was unable to perform his exercises according to the schedule. *Id*. Plaintiff alerted "all known and unknown medical officials" about his injury and need for exercises on a daily basis during this time period. *Id*. He blames "all nurses and medical officials" for failing to print out any call passes for him. *Id*.

In January 2016, Plaintiff's left knee again "snapped out of place." (Doc. 1, p. 7). Nurse Blake met with him on January 29, 2016. *Id*. Plaintiff describes Nurse Blake's treatment as inadequate, but he offers no details about it. *Id*. Plaintiff filed an emergency grievance the same day, and it was denied at each level on February 29, March 1, September 30, and October 7, 2016. *Id*. In the meantime, when Plaintiff again met with Doctor David, the doctor denied his request for an MRI. *Id*.

In August 2017, Plaintiff's left knee again snapped out of place. (Doc. 1, pp. 7-8). He was escorted in a wheelchair by an unknown male nurse, who gave him crutches, pain pills, a bottom bunk/bottom deck permit, and orders to shower in the prison's HCU. (Doc. 1, p. 8). Despite receiving the permit for a bottom bunk on the bottom deck of the prison, Plaintiff was never transferred into a new cell. *Id*.

On August 30, 2017, Plaintiff again met with Doctor David to discuss injuries he sustained from falling down the stairs after his left knee again snapped out of place. (Doc. 1, p. 8). Plaintiff renewed his request for an MRI, and he received the same response from Doctor

David. *Id*. He filed an emergency grievance after returning to his housing unit. *Id*. The grievance was denied. *Id*.

On November 4, 2017, Plaintiff was taken in a wheelchair by another inmate to the HCU, when his knee snapped out of place. (Doc. 1, p. 8). An unknown female nurse contacted Doctor David by phone and requested his permission to give Plaintiff crutches or admit him to the HCU. *Id*. At the time, Plaintiff could not walk. *Id*. Even so, the doctor denied both requests. *Id*. Plaintiff was taken back to his housing unit in a wheelchair. *Id*. He had to hop around on one leg until November 6, 2017, when he returned to the HCU by wheelchair and was refused service by Doctor David. *Id*. When the same nurse again sought permission from Doctor David to issue Plaintiff crutches, the doctor gave her the same response. *Id*. Plaintiff filed an emergency grievance again on November 8, 2017. *Id*.

In December 2017, Plaintiff was placed in a cell on the lower deck and issued another medical lay-in permit. (Doc. 1, p. 8). After waiting for two-and-a-half years, he was finally approved for an MRI of his left knee on December 19, 2017. *Id*. The MRI revealed a torn ACL and meniscus on December 27, 2017. *Id*. In addition, he has been diagnosed with several other serious conditions related to or arising from his knee injury. (Doc. 1, pp. 14-15).

Plaintiff maintains that he has received inadequate medical care from all of the defendants named in this action. (Doc. 1, pp. 9-15). This includes Wexford Health Sources, Inc., the private medical corporation that is responsible for implementing policies to ensure that inmates receive "prompt and adequate medical care." (Doc. 1, p. 9). Wexford is allegedly required to create effective medical programs, staff facilities, and monitor the performance of medical staff, in order to ensure that inmates receive medical care. (Doc. 1, pp. 9-10). Plaintiff

maintains that the defendants' denial of adequate or timely medical care exacerbated his original injuries, caused new injuries, and prolonged his pain. (Doc. 1, p. 10).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

> **Count 1 -** Eighth Amendment deliberate indifference claim against Doctor David, Nurse Blake, and Nurses John/Jane Does for delaying or denying treatment for the knee injury Plaintiff sustained on or around June 26, 2015.
>
> **Count 2 -** Eighth Amendment deliberate indifference claim against Wexford for failing to establish policies and procedures at Shawnee to ensure the prompt delivery of medical services to Plaintiff.
>
> **Count 3 -** Fourteenth Amendment due process claim against the defendants for improperly handling Plaintiff's grievances regarding the denial of medical care.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits. **Any claims that are not identified above but are encompassed within the Complaint are considered dismissed without prejudice from this action.**

### Count 1

The Eighth Amendment protects prisoners from a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). An Eighth Amendment claim based on the denial of medical care requires a prisoner to satisfy

both an objective and a subjective component. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). To satisfy the objective component of this claim, a plaintiff must allege that he suffered from a sufficiently serious medical condition. *Petties*, 836 F.3d at 727-28 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). To satisfy the subjective component of the claim, the plaintiff must show that each defendant was deliberately indifferent to the condition. *Id*.

The allegations satisfy the objective component of this claim. Plaintiff allegedly injured his left knee in June 2015. (Doc. 1, pp. 5-15). He suffered for two-and-a-half years or more before receiving a diagnosis. *Id*. During that time, he was often unable to walk and also describes persistent pain. *See Gaston v. Ghosh*, 498 F. App'x 629, 632 (7th Cir. 2012) (painful knee injury that was diagnosed by doctor and surgeon as requiring further evaluation and treatment deemed objectively serious). Plaintiff eventually underwent an MRI that revealed a torn ACL and meniscus, among other injuries. (Doc. 1, pp. 5-15). These injuries are considered objectively serious for screening purposes.

The allegations also satisfy the subjective component of this claim against Doctor David, Nurse Blake, and several other unknown nurses. Prison doctors demonstrate deliberate indifference when they respond to "a known condition through inaction" or "by persisting with inappropriate treatment." *Gaston*, 498 F. App'x at 631-32; *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010); *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *Greeno v. Daley*, 414 F.3d 645, 653-54 (7th Cir. 2005). Nurses, like doctors, may be liable for deliberate indifference if they "knowingly disregard a risk to an inmate's health." *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) (citing *Berry*, 604 F.3d at 443). A delay in necessary treatment may support a deliberate indifference claim against a medical provider if it aggravates an injury

or prolongs an inmate's pain. *See, e.g., Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (two days of pain from dislocated finger); *Jones v. Simek*, 193 F.3d 485, 487-90 (7th Cir. 1999) (six month delay in referral to a neurologist and denial of interim pain medication for prisoner suffering from pain and numbness in arm).

Doctor David's persistence in an ineffective course of treatment gives rise to a deliberate indifference claim against him. The doctor repeatedly denied Plaintiff's request for a diagnosis and treatment of his knee injury for more than two years. Likewise, Nurse Blake met with Plaintiff repeatedly during this time period and did little to assist Plaintiff in finding out why his knee continued to snap out of place, prevent him from walking, and cause him substantial pain. In addition, the allegations suggest that several unknown nurses may have responded to Plaintiff's complaints with deliberate indifference, including the unknown nurse who met with him on July 3, 2015 ("Nurse John/Jane Doe #1"), the unknown nurses who met with him on July 6, 2015 ("Nurses John/Jane Does #2, #3, and #4"),[2] the unknown nurse who met with him in August 2017 ("Nurse John/Jane Doe #5"), and the unknown nurse who met with Plaintiff on November 4 and 6, 2017 ("Nurse John/Jane Doe #6"). The Court will allow Count 1 to proceed against all of these defendants: Doctor David, Nurse Blake, Nurses John/Jane Does ##1-6.

Count 1 shall be dismissed against all other unknown medical providers mentioned in the Complaint, including the nurse or doctor who saw Plaintiff at an outside facility on one occasion in September 2015. (Doc. 1, p. 6). Whether a private medical provider can even be considered a "state actor" is a key factor in determining whether Plaintiff can maintain a deliberate indifference claim against this individual. *Rodriguez,* 577 F.3d at 822–30. A plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *See Am. Mfrs. Mut. Ins. Co.*

---

[2] It is unclear how many unknown nurses met with Plaintiff on this date. For ease of identification, the Court has designated three unknown defendants.

*v. Sullivan,* 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.,* 311 F.3d 851, 852–53 (7th Cir. 2003). Moreover, the medical provider can hardly be described as being deliberately indifferent, where he or she gave Plaintiff a tentative diagnosis of a torn ACL and meniscus that ultimately proved to be correct and never met with Plaintiff again. *Farmer*, 511 U.S. at 838 (negligence, even gross negligence, is insufficient to establish deliberate indifference).

Plaintiff's claim in Count 1 also fails against those medical providers who failed to print his call pass at the prison in October and November 2015. The failure to print a call pass is, at most, negligence, which is not actionable under § 1983. *Farmer*, 511 U.S. at 838. Further, Plaintiff offers no specific allegations against any particular person--instead relying on sweeping allegations against every medical provider who worked at the prison. *Twombly*, 550 U.S. at 555. Although Count 1 shall be dismissed against these unknown individuals, the dismissal shall be without prejudice, and Plaintiff may bring a claim against any of them by filing an amended complaint in this case or a separate action against them.

**Count 2**

The Complaint states no deliberate indifference claim in Count 2 against Wexford, the private medical corporation that provides medical services for inmates at the prison. Plaintiff cannot rely on a theory of *respondeat superior*, or supervisory liability, when bringing a claim against the medical corporation under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A private corporation will generally only be held liable under § 1983 for an unconstitutional policy or custom that results in a constitutional deprivation. *Perez*, 792 F.3d at 780 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)). The Complaint describes no such policy or custom attributable to Wexford. Plaintiff makes sweeping statements about Wexford's failure to implement policies aimed at ensuring timely and adequate medical care of

prisoners. However, he sets forth no supporting factual allegations that "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. For example, Plaintiff mentions Wexford's failure to ensure adequate staffing as being a problem, but he does not blame the prison's lack of medical personnel for his denial of medical care. He mentions Wexford's failure to implement policies aimed at the comprehensive care of inmates without pointing to any specific policies that resulted in the denial of his care or the denial of his requests for an MRI. In fact, Plaintiff points to no policy, custom, procedure, practice, or rule promulgated by Wexford that resulted in a constitutional deprivation. *City of Canton, Ohio v. Harris*, 489 U.S. 379, 385 (1989). Absent more specific allegations against Wexford, Count 2 cannot proceed and shall be dismissed without prejudice.

**Count 3**

The Complaint states no independent Fourteenth Amendment due process claim against the defendants for mishandling Plaintiff's grievance(s). First, Plaintiff does not specifically name any defendants in connection with this claim. (Doc. 1, pp. 5-15). He simply refers to the denial of several emergency grievances. *Id*. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). This is because "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure. *Id*. Therefore, the failure of state prison officials to follow their own procedures does not, by itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

On this basis, Count 3 shall be dismissed with prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 1 against Defendants Nurses John/Jane Doe ##1-6. However, these defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the prison warden will be added as a defendant, in his or her official capacity only, and shall be responsible for responding to discovery aimed at identifying the unknown nurses. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Nurses John/Jane Doe ##1-6 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

## Pending Motion

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to a United States Magistrate Judge for a decision.

## Disposition

The Clerk is **DIRECTED** to: (1) **SUBSTITUTE** Defendant **NURSES JOHN/JANE DOE ##1-6** in place of Defendant **JOHN AND JANE DOES** on the docket sheet and in CM/ECF; (2) **ADD** the **WARDEN OF SHAWNEE CORRECTIONAL CENTER (official capacity only)** as a defendant in order to respond to discovery aimed at identifying the unknown

defendants and to carry out any injunctive relief that is ordered; and (3) **ADD** a Motion for Preliminary Injunction to the docket sheet in CM/ECF.

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review against Defendants **ALFONSO DAVID, NURSE BLAKE,** and **NURSES JOHN/JANE DOE #1-6**. This claim is **DISMISSED** without prejudice against all other known and unknown defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** without prejudice against Defendant **WEXFORD HEALTH SOURCES, INC.** for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 3** is **DISMISSED** with prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for Defendants **WARDEN OF SHAWNEE CORRECTIONAL CENTER (official capacity only), ALFONSO DAVID, NURSE BLAKE,** and **NURSES JOHN/JANE DOE #1-6 (once identified)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by

Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **NURSES JOHN/JANE DOES ##1-6** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on the pending Motion for Recruitment of Counsel (Doc. 3) and a plan for discovery aimed at identifying the unknown defendants with particularity. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 5, 2018**

<u>s/ Michael J. Reagan</u>
**Chief Judge**
**United States District Court**