**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RICHARD WHITE, #R-14550, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - vs- | )   No. 18-cv-00165-MJR |
| | ) |
| WEXFORD HEALTH SOURCES, et al., | ) |
| | ) |
| Defendants. | ) |

**ANSWER AND AFFIRMATIVE DEFENSES**

NOW COMES the Defendant, JEFFERY DENNISON (IN HIS OFFICIAL CAPACITY ONLY), by and through his attorney, Lisa Madigan, Attorney General for the State of Illinois, and for his Answer and Affirmative Defenses to Plaintiff's Complaint [Doc. 1], states as follows:

JURISDICTION AND VENUE

**Defendant admits that jurisdiction, except as to claims barred by sovereign immunity, is proper. Defendant admits that venue is proper.**

ALLEGATIONS

12.) On 6-26-15, at approximately 1:30 p.m., plaintiff suffered a left knee injury while playing basketball in the gym at Shawnee Correctional Center. Plaintiff was escorted by wheelchair from the gym to the health care unit. Plaintiff was examined by Nurse Terry and Physician's Assistant Blake. Plaintiff explained to them that he couldn't walk, fully extend, put any pressure on, stretch or lift his left leg, and that he was experiencing great pain. Plaintiff was prescribed pain pills, given crutches, told he would receive a follow-up and was sent back to his housing unit. (See exhibit (A) for crutches possession card).

**ANSWER: Defendant admits that records indicate Plaintiff went to the healthcare unit complaining of left knee pain or discomfort, and that he was provided crutches and ibuprofen, and a follow up was scheduled for June 30, 2015. Defendant lacks knowledge or information sufficient to form a belief about the rest of the allegations in this paragraph.**

13.) On 6-30-15, plaintiff had a follow-up and explained to Physician's Assistant Blake that his knee hasn't gotten any better. Plaintiff was given a slow walk pass and a sports restrictions memorandum. (See exhibit (A) for slow-walk pass and sports restrictions memorandum). (See exhibit (B) for call pass).

**ANSWER: Defendant admits that records indicate the allegations in this paragraph are true.**

14.) On 7-3-15, plaintiff was in his cell when he stood up from his bunk to use the toilet inside the cell and his left knee snapped out of place. Plaintiff was escorted by wheelchair to the healthcare unit where he was seen by an unknown nurse and explained that his left knee is and has gotten worse. Plaintiff was given an ace bandage for the first time since the injury occurred and pain pills. (See Exhibit (A) for ace bandage possession card).

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of these allegations.**

15.) On approximately 7-6-15, plaintiff had x-rays taken on his left knee. Before seeing x-ray specialist he explained to unknown nurses that his knee has gotten worse.

**ANSWER: Defendant admits that records indicate that Plaintiff had an x-ray on July 6, 2015. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.**

16.) On 7-10-15, plaintiff was seen by Physician's Assistant Blake w/o had plaintiff's x-ray results. He told plaintiff that he had

17.) Tricompartment Arthritis/Osteoarthritis and knee joint effusion. Plaintiff explained to Blake that his knee snapped out of place the day before and that he never had any arthritis or problems with his left knee before the injury on 6-26-15. He also explained that his left knee is always popping, snapping out of place and causing him great pain. That he can't fully stretch out his left leg and (upon receiving information) he has a torn ACL, MCL, tissue(s), muscle(s) and/or ligament(s) in his left knee, and that he would like a MRI since the x-ray didn't identify the injury and because his knee has rapidly gotten worse. (See exhibit (B) for call pass).

**ANSWER: Defendant admits that records indicate Plaintiff was seen on July 10, 2015, and that Plaintiff had a small effusion on his left knee. Defendant lacks knowledge or information sufficient to form a belief of the truth of the remaining allegations.**

18.) On 8-10-15, plaintiff's left knee snapped out of place and he was placed back on crutches, placed on medical lay-in, no gym and yard and was to receive meals in his cell. Each time plaintiff was placed on crutches he had to go eat in the dining hall where the floors stayed wet and messy, and no matter the weather conditions outside until 8-10-15.

**ANSWER: Defendant admits that records indicate Plaintiff was seen in the health care unit for left knee pain on August 10, 2015. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.**

19.) On 9-9-15, one day after plaintiff saw Dr. David and requested a MRI on his left knee, after explaining everything aforementioned in these facts, he received a paper stating that he was denied a MRI by facility's Medical Director Dr. David, ignoring the many times his knee has snapped out of place, the symptoms of something more serious that an x-ray couldn't show, and explanations he'd given about the condition of his left knee. (See exhibit (A) for MRI denial and exhibit (B) for call pass).

**ANSWER: Defendant admits that records indicate that Plaintiff was seen by medical personnel on September 9, 2015. Defendant denies that records indicate Dr. David denied Plaintiff's request for an MRI. Defendant lacks knowledge or information sufficient to form a belief about the truth of these allegations.**

20.) On 7-27-15, and 8-27-15, plaintiff filed emergency grievances concerning his left knee and the inadequately medical treatment he was receiving that he never got back or a response to. (See exhibit (C) for grievances).

**ANSWER: Defendant denies that Plaintiff sent grievances on 7/27/2015 or 8/27/2015.**

21.) Approximately mid-to late September 2015, plaintiff was taken to an outside hospital almost three months after the initial injury to his left knee and after all of his complaints. He was examined by an unknown female nurse and/or doctor. She did her examination by sight, touch and

4

22.) questions. Plaintiff explained everything aforementioned in these facts about his left knee and that, it has gotten rapidly worse. Plaintiff still didn't receive a MRI but, the doctor/nurse's professional verbal diagnosis was that he had an ACL tear which is what he'd been telling medical officals and correctional officers at Shawnee Correctional Center since the injury first occurred. The female doctor and/or nurse gave plaintiff a paper with knee exercises for him to complete everyday for two months. (See exhibit (A) for treatment exercises).

**ANSWER: Defendant admits that Plaintiff was referred to Union County Hospital for a one-time physical therapy evaluation for a home exercise program. Defendant lacks knowledge or information sufficient to form a belief about the truth of these allegations.**

23.) On approximately 9-24-15, plaintiff began the treatment exercises in the healthcare unit in front of medical officials. From 10-9-15, to 10-14-15, and 11-10-15, to 11-25-15, plaintiff didn't receive a call pass to the healthcare unit to proceed with his treatment exercises. All nurses and medical officials neglected and failed the simple task of printing out a call pass so, plaintiff could do his treatment in their presence. Everyday during the two month span of his treatment, plaintiff alerted all known and unknown medical officials everything aforementioned in these facts about his left knee worsening rapidly and not improving. Plaintiff's complaints were ignored as his injury was serious and obvious and is currently obvious. (See exhibit (B) for call passes and non-call passes).

**ANSWER: Defendant denies that medical records indicate he was denied access to the HCU.**

> 24.) Plaintiff's left knee snapped out of place in January of 2016, and he was seen by Physician's Assistant Blake on 1-29-16, where Blake gave him inadequate medical treatment yet again. (See exhibit (B) for call pass). Plaintiff filed an emergency grievance on 1-29-16, that was denied by Shawnee Correctional Center on 2-29-16, and 3-1-16, and denied by Springfield on 9-30-16, and 10-7-16. (See exhibit (C) for grievance and grievance denials). Plaintiff saw Dr. David in March of 2016, about his knee where Dr. David denied a MRI request as plaintiff complained of pain and his inability to be active. (See exhibit (B) for call pass).

**ANSWER: Defendant admits that Plaintiff was seen in the HCU in January 2016. Defendant admits that an emergency grievance dated January 29, 2016 was received and deemed an emergency grievance on February 17, 2016. The grievance officer received and reviewed this grievance on February 29, 2016. Warden Dennison concurred with the grievance officer's recommendation on March 1, 2016. The Administrative Review board received this grievance on March 23, 2016 and denied it as appropriately addressed. Defendant admits that records indicate that Plaintiff was seen by healthcare staff in March regarding his left knee pain.**

> 25.) In approximately August 2017, plaintiff's left knee snapped out of
>
> 26.) place and he was escorted by wheelchair by an unknown male nurse who gave plaintiff crutches, pain pills, a mandate to shower in the healthcare unit and a bottom bunk-bottom deck referral. Plaintiff never got the cell change and is still currently in cell 3-D-64 (See exhibit (B) for latest call pass).

**ANSWER: Defendant admits that records indicate that Plaintiff was seen by healthcare staff in August of 2017 for his left knee pain, and that crutches and medication were**

6

**administered. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.**

27.) On 8-30-17, plaintiff was seen by Dr. David and Dr. David read from plaintiff's medical file to plaintiff, that his left knee snapped out of place on some stairs causing him to fall down the stairs. Plaintiff was denied another MRI request by Dr. David and was sent to his housing unit. Plaintiff filed an emergency grievance on Dr. David and the healthcare officials that was denied by Shawnee Correctional Center on 9-13-17, and denied by Springfield on 10-17-17. (see exhibit (C) for grievance and grievance denials).

**ANSWER: Defendant admits that records indicate he was seen by the health care unit on August 30, 2017. Defendant admits that records indicate Plaintiff requested an MRI. Defendant admits Plaintiff wrote a grievance dated October 30, 2017. Defendant admits that grievance was received and deemed an emergency on September 1, 2017. Defendant admits that Plaintiff's grievance was recommended to be denied. Defendant admits that Warden Dennison concurred in the recommendation on September 13, 2017. Defendant admits that Plaintiff's grievance was received by the Administrative Review Board and denied on October 17, 2017.**

> 28.) On 11-4-17, plaintiff's left knee snapped out of place and he was escorted by wheelchair by an inmate (not healthcare officials) healthcare worker to the healthcare unit. Plaintiff was seen by an unknown female nurse who called Dr. David by telephone asking him for permission to give plaintiff crutches or to admit plaintiff to hospice care in the healthcare unit because he couldn't walk. Dr. David denied both requests and plaintiff was escorted by wheelchair back to his housing unit by the same inmate healthcare worker. Plaintiff had to hop around on one leg until 11-6-17. On 11-6-17, plaintiff was escorted by wheelchair by the same inmate healthcare worker to the healthcare unit where Dr. David wouldn't see him and denied him crutches again when that same unknown female nurse asked Dr. David for crutches and to see plaintiff. An emergency grievance was filed on Dr. David on 11-8-17, and is pending in Springfield as it was denied by Shawnee on 12-6-17. Plaintiff was placed on medical lay-in. (See exhibit (A) for lay-in slip and exhibit (B) for call pass on 11-6-17). On 11-18-17, plaintiff was placed in cell 3-D-22, a lower-deck cell. After approximately two and one half years, plaintiff was given a MRI on his left knee on 12-19-17, and was told he had an ACL tear and a meniscus tear on 12-27-17.

**ANSWER: Defendant admits that records indicate Plaintiff was seen in the health care unit on November 4, 2017 regarding left knee pain. Defendant admits that records indicate that no crutches or medication were provided. Defendant denies that records indicate that Plaintiff's allegations regarding his visit to the health care unit on November 6, 2017 are complete and accurate. Defendant admits that Plaintiff wrote a grievance dated November 8, 2017. Defendant denies that grievance was deemed an emergency. Defendant denies that the grievance officer in Shawnee denied that grievance. Defendant denies that grievance is "pending in Springfield." Defendant admits that records indicate Plaintiff discovered his ACL tear and meniscus tear sometime during December 2017. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.**

<u>LEGAL CLAIMS</u>

Defendant denies all of Plaintiff legal claims and conclusions.

## RELIEF REQUESTED

Defendant denies that Plaintiff is entitled to any relief whatsoever.

## JURY DEMAND

Defendant demands a trial by jury.

## AFFIRMATIVE DEFENSES

1. **Qualified Immunity**

At all times relevant herein, Defendant acted in good faith in the performance of his official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant is therefore protected from suit by the doctrine of qualified immunity.

2. **Sovereign Immunity**

Under the Eleventh Amendment, any potential request for monetary damages against Defendant in his official capacity is barred by sovereign immunity.

3. **Injunctive Relief Barred**

To the extent Plaintiff is suing Defendant for injunctive relief that is not intended to address ongoing constitutional violations, the Eleventh Amendment and sovereign immunity bar such claims.

4. **Statute of Limitations**

To the extent Plaintiff's claims for relief accrued more than two years prior to the initiation of this case, those claims are barred by the applicable statute of limitations.

WHEREFORE, for the above and foregoing reasons, Defendant respectfully requests this Honorable Court deny Plaintiff any relief in this matter whatsoever.

    Respectfully submitted,

    JEFFERY DENNISON

        Defendant,

    LISA MADIGAN, Attorney General,
    State of Illinois,

        Attorney for Defendant,

By: s/ R. Kolton Ray
    Robert Kolton Ray, #6327476
    Assistant Attorney General
    500 South Second Street
    Springfield, Illinois  62701
    Telephone:  (217) 557-8197
    Facsimile:  (217) 782-8767
    Email:  rray@atg.state.il.us

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RICHARD WHITE, #R-14550, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| - vs- ) | No. 18-cv-00165-MJR |
| ) | |
| WEXFORD HEALTH SOURCES, et al., ) | |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2018, the foregoing document, **Answer and Affirmative Defenses**, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

NONE

and I hereby certify that on the same date, I caused to be mailed by United States Postal Service, a copy of the foregoing document to the following non-registered participant:

Richard White, #R-14550
Shawnee Correctional Center
Inmate Mail/Parcels
6665 State Road Route 146 E
Vienna, IL 62995

s/ R. Kolton Ray
Robert Kolton Ray, #6327476
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
Telephone:   (217) 557-8197
Facsimile:   (217) 782-8767
Email: rray@atg.state.il.us

11