# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-0165-MJR-MAB |
| | ) |
| NURSE BLAKE, | ) |
| ALFONSO DAVID, | ) |
| WARDEN OF SHAWNEE | ) |
|   CORRECTIONAL CENTER, | ) |
| and JOHN/JANE DOES #1-#6, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

I. INTRODUCTION

One year ago, Richard White (Plaintiff) filed a pro se complaint in this Court under 42 U.S.C. 1983, alleging that various healthcare providers and correctional officials were deliberately indifferent to his serious medical needs, i.e., that they denied him adequate medical care for a knee injury sustained in 2005 at Shawnee Correctional Center (Shawnee). As explained in the Court's threshold review Order (Doc. 6), Plaintiff sued Wexford Health Sources, Inc. (a private medical corporation that contracts to provide healthcare to Illinois prison inmates), Dr. Alfonso David, "Nurse Blake," and six unknown "John Doe"/"Jane Doe" nurses. In the threshold Order, the Court dismissed Wexford, allowed the case to proceed against David, Blake, and the six John/Jane Doe defendants, and added the Warden of Shawnee as a defendant only to help identify the unknown parties and implement any injunctive relief that might be ordered.

The Warden, Jeffery Dennison, answered the complaint on May 4, 2018. Dr. David answered on July 27, 2018. The nurse practitioner identified in the complaint as "Nurse Blake" answered the complaint on July 30, 2018, clarifying that his true name is Blake Woods (*see* Doc. 27).[1] On January 17, 2019, Plaintiff secured additional time to identify the John and Jane Doe defendants.

The case comes before the Court on Plaintiff's request for a preliminary injunction, which was contained in his complaint but docketed as a separate motion (Doc. 7), to which Defendants Woods and David responded on September 25, 2018 (Doc. 39). On December 5, 2018, the United States Magistrate Judge then assigned to the case, the Honorable Stephen C. Williams, issued a Report and Recommendation (R&R, Doc. 47), recommending that the undersigned District Judge deny the motion for preliminary injunction. Plaintiff timely objected to the R&R (Doc. 48), Defendants Woods, David, and Dennison responded to the objections (Docs. 49 and 52), and Plaintiff replied thereto (Doc. 55). Analysis begins with an overview of the key facts and allegations.

II. **SUMMARY OF KEY ALLEGATIONS AND FACTS**

While playing basketball on June 26, 2015 in the Shawnee gym, Plaintiff injured his left knee. He was taken by wheelchair to Shawnee's health care unit (HCU) and examined by Nurse Practitioner Woods and a nurse. Plaintiff reported he was in pain and could not walk or put pressure on his left leg. He was given pain medication and crutches.

---

[1] The Clerk's Office shall correct the docket sheet so that "Nurse Blake" is accurately listed as Blake Woods and the Shawnee Warden as Jeffery Dennison.

Plaintiff returned to the HCU several days later, saying his knee felt no better. He was given a "slow walk" permit and a sports restriction and scheduled for a follow-up appointment in July. In the following weeks, Plaintiff continued to report to health care staff that his left knee felt like it had popped out of place. In July 2015, his left knee was x-rayed. The x-ray revealed early arthritis and a small effusion but no fractures. Plaintiff was prescribed anti-inflammatory pain medication and told to gradually increase his activity and decrease use of the crutches. He still complained that his knee was not getting better. He also filed grievances regarding his knee pain.

The R&R delineates in careful detail all the medical treatment received by Plaintiff relating to the left knee injury, starting with Dr. David's initial exam of Plaintiff on August 13, 2015 (he diagnosed a ligament strain, renewed Plaintiff's pain medication prescription, placed Plaintiff on non-weight-bearing status, and ordered a repeat x-ray of the knee) and continuing up through a November 2017 examination by Dr. David. Dr. David twice requested an MRI (a request that had to be submitted to Collegial Review). His first request was denied, but his second request was granted. A December 2017 MRI revealed tears in Plaintiff's meniscus and anterior cruciate ligament (ACL).

Plaintiff was referred for an orthopedic surgical consult, which took place in January 2018. The orthopedic surgeon (not a party herein) recommended that Plaintiff have surgery to repair his meniscus but did *not* recommend surgery for the ACL injury. Dr. David requested approval for the surgical procedures recommended by the orthopedic surgeon, which led to Plaintiff's March 22, 2018 left knee surgery – an

arthroscopic medial meniscectomy and synovectomy of patellofemoral, medial, and lateral compartments, plus injections of Marcaine and Decadron. In the weeks after that surgery, Plaintiff was seen several times by Dr. David, who explained to Plaintiff the surgeon's recommendations for post-surgery therapy and rehabilitation.

After the March 2018 surgery on his meniscus, Plaintiff went for physical therapy recommended for his *ACL*. Plaintiff periodically complained of pain, weakness, or instability in his left knee. Defendants note (Doc. 39, p. 12) that after completing his recommended post-operative physical therapy, Plaintiff was a "no show" for two consecutive appointments to evaluate the left knee. No further surgery was immediately ordered. However, Plaintiff was approved and scheduled for a follow-up evaluation with the orthopedic surgeon in September 2018 (described below more fully).

In the prayer for relief in his complaint (the filing of which pre-dated some of the above-recited history of treatment), Plaintiff asked for a preliminary injunction requiring Wexford and Shawnee officials to create a comprehensive plan for his future medical care, and to ensure that "current and future prisoners of Shawnee Correctional Center receive adequate medical treatment under law" (Doc. 1, p. 15). Wexford was dismissed from this case on threshold review. The motion is construed as seeking the preliminary injunction against Dr. David, the Medical Director at Shawnee and person responsible for Plaintiff's medical care while he is confined at that facility.

### III. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."

*Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). *Accord D.U. v. Rhoades,* 825 F.3d 331, 335 (7th Cir. 2016), *citing Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008).

To obtain a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn,* 612 F.3d 537, 546 (7th Cir. 2010), *citing Winter,* 555 U.S. at 20. The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge,* 612 F.3d at 546. *See also Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013), *cert. denied sub nom. Burwell v. Korte,* -- U.S. --, 134 S. Ct. 2903 (2014).[2]

In the context of prisoner litigation, there are additional restrictions on courts' remedial power. The scope of a court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012), *citing* 18 U.S.C. 3626(a) and *Lindell v. Frank,* 377 F.3d 655, 660 (7th Cir. 2004). Under the PLRA, preliminary injunctive relief "must be narrowly

---

[2] Some cases formulate the test in a slightly different way, saying the plaintiff first must prove three things – (1) without preliminary injunctive relief he will suffer irreparable harm before his claim is finally resolved, (2) he has no adequate remedy at law, and (3) he has some likelihood of success on the merits. If the plaintiff makes that showing, then the court weighs the harm the plaintiff will suffer *without* the injunction against the harm the defendants will suffer *with* the injunction and asks whether the preliminary injunction is in the public interest. *See Harlan v. Scholz,* 866 F.3d 754, 758 (7th Cir. 2017). But all cases emphasize: "This type of relief must not lightly be granted." *Id.*

drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. 3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

IV. ANALYSIS

Plaintiff's deliberate indifference claims rest on the Eighth Amendment to the United States Constitution. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005),** *quoting Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted).** To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong requires the prisoner to show that he has an objectively serious medical need. *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at 653.** A medical condition need not be life-threatening to be serious; it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires deliberate indifference to a substantial risk of serious harm).**

Only if the objective prong is satisfied is it necessary to analyze the second or

subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652–53.** Prevailing on the subjective prong requires a prisoner to show that a prison official had subjective knowledge of—and then disregarded—an excessive risk to inmate health. *Greeno*, **414 F.3d at 653.**

Here, Plaintiff seeks a preliminary injunction to compel Shawnee's Medical Director (Dr. David) to create a comprehensive plan for his future medical care and ensure that he gets all the medical treatment he is entitled to "under law" (Doc. 1, p. 15). Judge Williams found that Plaintiff had fallen short of satisfying his burden for issuance of preliminary injunctive relief. Plaintiff's objection to the R&R stresses that although he received x-rays and pain medicine "from 2015-2018 as treatment for his left ACL injury," he was denied several MRI requests, did not receive an MRI in a timely fashion, had "inefficient and unproductive visits" to medical personnel, and only obtained surgery after more than two years complaining "of pain, aggravation and disability of his left knee." He terms this a pattern of deliberate indifference by Defendants. He also states in conclusory fashion that the harm he could suffer to his left ACL "would be greater than the harm the injunction would inflict on the defendants," suggesting that "without surgery, plaintiff is subject to further pain and injury" and possibly another ligament tear (Doc. 48 pp. 1-2). The Court is not persuaded.

Plaintiff has not shown that he is likely to succeed on the merits of his deliberate indifference claim. Nor has he demonstrated that he will suffer irreparable harm in the absence of a preliminary injunction. We turn first to Plaintiff's likelihood of success on his Eighth Amendment deliberate indifference claim.

Prison healthcare staff violate the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to a prisoner's health. *Farmer,* **511 U.S. at 837;** *Gonzalez v. Feinerman,* **663 F.3d 311, 313 (7th Cir. 2011).** The question is not whether Plaintiff had a pleasing or perfect treatment experience. It is not whether the undersigned would have followed the same treatment protocol or more expeditiously scheduled Plaintiff for surgery. It is whether Defendants intentionally disregarded Plaintiff's serious medical condition.

Prisoners are not entitled to the ideal or best course of treatment for medical needs. Indeed, neither medical malpractice nor disagreement with a doctor's medical judgment suffices to prove deliberate indifference in violation of the Eighth Amendment. *See Berry v. Peterman,* **604 F.3d 435, 441 (7th Cir. 2010).** True, persistence in a course of treatment *known to be ineffective* violates the Eighth Amendment, and a significant delay in effective medical treatment can support a deliberate indifference claim (for instance, where it causes prolonged and unnecessary pain). *Id., citing Greeno,* **414 F.3d at 655, and** *Grieveson v. Anderson,* **538 F.3d 763, 779 (7th Cir. 2008).**

The record here reveals that in the immediate aftermath of the injury, Plaintiff (who reported his pain as a "5" on a scale of 1 to 10) was treated appropriately by HCU staff – given anti-inflammatory medicine and crutches, later given a slow-walk permit and a sports restriction, and at a follow-up appointment given an x-ray and an ace bandage wrap for the knee. When Plaintiff failed to improve, physician's assistant Woods referred Plaintiff to Dr. David, who — over time — got Plaintiff a physical therapy consult, renewed his pain medication prescriptions, ordered a repeat x-ray, examined

Plaintiff several times, requested an MRI twice (successfully the second time), referred Plaintiff for an outside orthopedic surgery consult (which occurred in January 2018), requested approval for the procedures recommended by the orthopedic surgeon (a surgery that occurred in March 2018), and followed up with Plaintiff regarding post-operative rehab. Ultimately, Plaintiff was approved for and received another evaluation by the orthopedic surgeon in late September 2018.

The record does not disclose any foot-dragging or insouciance toward Plaintiff's medical needs by Shawnee medical staff. Dr. David promptly took action when examination or tests warranted. Plaintiff received and continues to receive treatment for his left knee pain/condition, including treatment by an "outside" physician (Dr. J.T. Davis of the Orthopedic Institute of Southern Illinois). After the January 23, 2018 consult with Plaintiff, the orthopedic surgeon recommended repair of the meniscus *but no surgical intervention for the ACL.* Dr. David conveyed this to Plaintiff on February 6, 2018 and made a recommendation for the meniscus surgery the same day. The request was approved February 26, 2018; the surgery occurred on March 22, 2018. Plaintiff had follow-up appointments in April and May 2018, was evaluated by Dr. David again in June 2018, and continued physical therapy through August 27, 2018. When Plaintiff reported left knee pain to Dr. David in mid-September 2018, he was scheduled for another appointment with the outside orthopedic surgeon for September 28, 2018.

A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care or particular treatment. ***Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).** As the Seventh Circuit explained last month in an unreported

decision, although a plaintiff may want more treatment than he is receiving, "his mere disagreement with the course of treatment" does not support a claim of deliberate indifference to his medical needs. *Holmes v. Shah,* -- Fed. App'x --, 2019 WL 193127, *2 (7th Cir. Jan. 15, 2019), citing *Berry,* 604 F.3d at 441, and *Harper v. Santos,* 847 F.3d 923, 927 (7th Cir. 2017).

The undersigned agrees with Judge Williams' conclusion (Doc. 47, p. 8) that:

Plaintiff has not shown that he has a likelihood of success on the merits as to his claim regarding Defendants' alleged deliberate indifference … (as) the record indicates that a comprehensive plan exists to provide for Plaintiff's care, and that Plaintiff has received such treatment and remains scheduled to receive such treatment in the future.

Not only has Plaintiff failed to shoulder his burden on the likelihood of success on the merits, he also has not demonstrated that he will suffer irreparable harm in the absence of the preliminary injunctive relief he requests – the compelled, court-ordered comprehensive plan for his current and future medical treatment. Defendants' responses to Plaintiff's objections to the R&R (which include excerpts from Plaintiff's medical records, *see* Doc. 49-1, Doc. 57) shed light on additional treatment provided to and ordered for Plaintiff in recent months.

Plaintiff did, in fact, get seen by the orthopedic surgeon on September 28, 2018. The surgeon did, in fact, recommend reconstruction surgery on Plaintiff's left knee ACL. The reconstruction did, in fact, get scheduled. And the ACL surgery did, in fact, take place on January 10, 2019. Plaintiff was approved for and received a post-operative follow-up appointment with the surgeon on January 23, 2019. And he is scheduled for

another follow-up appointment with the surgeon in the near future.[3]

Plaintiff has not shown a likelihood of success on the merits of his deliberate indifference claim or that he would suffer irreparable harm during the pendency of this action, absent the extraordinary remedy of a preliminary injunction. For these reasons, the motion for preliminary injunction must be denied.

V. CONCLUSION

The Court **OVERRULES** Plaintiff's objections, **ADOPTS** in its entirety Judge Williams' R&R (Doc. 47), and **DENIES** Plaintiff's motion for preliminary injunction (Doc. 6). One other motion remains pending – Plaintiff's September 13, 2018 motion to appoint counsel (Doc. 38), which will be ruled on by the Magistrate Judge now assigned to the case, the Honorable Mark A. Beatty, via separate Order.

IT IS SO ORDERED.

DATED February 6, 2019.

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge

---

[3] In response to a January 30, 2019 Order (Doc. 56) directing defense counsel to provide a status report on whether the ACL reconstruction surgery had been performed, Defendants filed a three-page status report along with 20 pages of attached medical records on January 31, 2019 (Doc. 57). They also provided via email for *in camera* review by the undersigned a one-page medical note stating the date of Plaintiff's upcoming appointment with the orthopedic surgeon. That sheet was furnished in this manner to comply with security restrictions regarding prisoner movement. The Clerk's Office **SHALL FILE ex parte under seal** the one page received for *in camera* review on January 31, 2019, so that it is part of the record. It shall be filed as a supplement to the status report at Doc. 57.